IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

PETER T. HARRELL,

                                    Civ. No. 08-3092-PA

            Plaintiff,

                                    **OPINION AND ORDER**

    v.

COSTCO, et al.,

            Defendants.

_____

**PANNER, J.**

    Plaintiff Peter T. Harrell was acquitted on a charge of

attempted theft from a Costco store in Medford.  Plaintiff then

brought this action pro se against Costco and Costco employees,

asserting civil rights claims under 42 U.S.C. § 1983 and state

law claims for defamation, false imprisonment, malicious

prosecution, negligence, and intentional infliction of emotional

distress.

    Plaintiff also brought claims against the City of Medford

1 - OPINION AND ORDER

and Medford police officer Ralph Sartain. Plaintiff voluntarily
dismissed his claims against Sartain and settled his claims with
the City.

The parties move for summary judgment. I grant the Costco
defendants' motion for summary judgment and deny plaintiff's
motion for summary judgment.

## BACKGROUND

In describing the events at issue, I refer to four
handwritten statements, signed and dated by the Costo employees
who dealt with plaintiff during incident at issue. The employees
made the statements as part of Costco's internal investigation,
conducted within days of the incident by defendant Bob
Froschauer, Costco's loss prevention supervisor. See Froschauer
Decl. at 2 & Ex. B. Although the Costco employees' statements
are not sworn, the statements are relevant to determining whether
the Costco defendants had probable cause to believe plaintiff
committed theft. See Franklin v. Fox, 312 F.3d 423, 438 (9th
Cir. 2002) ("evidence [supporting probable cause] need not be
admissible, but only legally sufficient and reliable").

On February 18, 2007, plaintiff and Kimberly Olson went to a
Costco warehouse store in Medford to return a defective cordless
drill plaintiff had purchased in October 2006. Pltf.'s Ex. E.
Plaintiff and Olson did not bring the drill bits or the carrying
case that came with the drill.

2 - OPINION AND ORDER

Olson went to the Returns counter, carrying the defective drill and a new drill set.  A Costco employee told Olson that she could not exchange the defective drill by itself for a complete new drill set.  See Pltf.'s Ex. J (Olson's  statement).  The employee explained that Olson would need to purchase a new drill set at the checkout line, take the new drill set back to the Returns counter, and leave the carrying case and drill bits for Costco while keeping the new drill.

Olson was authorized to use plaintiff's American Express credit card.  At the Returns counter, Olson signed a credit card receipt for a refund of $39.49, the purchase price of the original drill set.  The statement of employee who dealt with Olson at the Returns counter, and Froschauer's subsequent report, refer to Olson receiving a "cash" refund.  Froschauer Decl., Ex. A.  In the context of this transaction, it is apparent that the word "cash" referred to a credit card refund as opposed to an exchange of merchandise.

Plaintiff, who was not with Olson at the Returns counter, thought the refund receipt showed that Costco had charged Olson $39.49 for the new drill set, rather than crediting her for that amount.  The refund receipt does state, "I agree to pay above amount according to card issuer agreement."  Pltf.'s Ex. D. However, the dollar amount on the refund receipt was followed by a "-", which indicated a credit to plaintiff's account.  It is

3 - OPINION AND ORDER

undisputed Costco did give plaintiff a refund of $39.49. Pltf.'s
Ex. D; Froschauer Decl., Ex. A, at 2.

Olson left the defective drill at the Returns counter and
went to the checkout line with the new drill set. The Costco
transaction records for plaintiff show the cashier initially
charged for the new drill set, and then voided the purchase.
Froschauer Decl., Ex. A, at 2. According to the cashier's
written statement, plaintiff arrived at the checkout line during
the transaction. After the cashier voided the purchase at
plaintiff's request, plaintiff demanded the new drill set, which
had been set aside. According to the cashier, plaintiff then
walked away with the new drill set, saying he wanted to take it
to a manager.

After plaintiff and Olson left, the cashier asked an
assistant to follow them "to make sure they really went to
returns with [the new drill set]." Froschauer Decl., Ex. B, at
4. A few minutes later, the assistant reported that Olson and
plaintiff did not stop at the Returns counter. The cashier
walked outside the store but could not find plaintiff or Olson.

Later that day, defendant Jay Moscatelli, then Costco's
warehouse manager, learned about the incident. By declaration,
Moscatelli states,

    I spoke with several of the Costco employees who had
    been involved in the incident and they described to me
    that Mr. Harrell had been angry about an attempted
    return/exchange of a defective drill set that was

4 - OPINION AND ORDER

missing certain pieces. Mr. Harrell had raised his
voice, used profanity, and was otherwise rude to
several of the Costco employees. After the verbal
confrontation with Costco employees, Mr. Harrell left
the warehouse with a drill set that I later found out
was not paid for.

Moscatelli Decl. at 2.

Moscatelli asked Froschauer to investigate the incident.
Froschauer instructed the employees who dealt with plaintiff or
Olson to write statements describing what they had witnessed.
After reviewing the employees' statements and plaintiff's
shopping record with Costco, Froschauer concluded plaintiff left
the store without paying for the new drill set.

The next day, Moscatelli sent plaintiff a letter stating
that Costco "had received verified reports that your Costco
Wholesale membership account has been used in an inappropriate
manner at our business." Pltf.'s Ex. K. Moscatelli stated that
Costco was terminating plaintiff's membership.

Plaintiff responded that the incident was a "lengthy,
Byzantine, fiasco engendered by your employees concerning what
was supposed to be . . . a simple return/exchange of defective
merchandise." Pltf.'s Ex. L. Plaintiff demanded that Costco
refund his membership dues.

Moscatelli responded that Costco stood by its decision to
terminate plaintiff's membership. Moscatelli sent plaintiff a
refund check for $217 as a refund of membership dues.

On February 26, 2007, Froschauer reported the incident to

5 - OPINION AND ORDER

Medford police officer Ralph Sartain. Froschauer also sent

Sartain his internal report of the incident and the Costco

employees' written statements. After talking to Froschauer and

reviewing the evidence, Sartain told Froschauer he believed there

was probable cause to charge plaintiff with theft.

Sartain emailed plaintiff to request a meeting. In the

email, Sartain summarized the information he had received about

the February 18 incident:

> It is alleged that while you and Kimberly Olson were
> shopping at the store a disagreement had taken place
> over the return of a drill set. It is further alleged
> that while you were in the process of purchasing a new
> drill set, the transaction was voided at your request.
> You then obtained this drill under the pretence that
> you would be contacting a manager about the situation.
> You reportedly negated this decision and exited the
> business with the drill and without paying for the
> item.

Pltf.'s Ex. A. Sartain warned plaintiff that failure to contact

him would result in a request for an arrest warrant.

On March 2, 2007, plaintiff sent a letter to Moscatelli,

stating Sartain had contacted him about the drill incident.

Plaintiff proposed that Costco withdraw the criminal complaint in

exchange for his agreement to waive civil claims he might have

against Costco. Plaintiff also sent Moscatelli a copy of the

American Express refund receipt, which plaintiff claimed showed

Olson had paid for the new drill set at the Returns counter.

On March 5, 2007, Moscatelli explained to plaintiff that the

refund receipt showed a $39.49 credit to plaintiff's American

6 - OPINION AND ORDER

Express account, as indicated by the "-" following the dollar amount. Moscatelli stated that Costco would consider a civil compromise "upon receipt of payment for the drill voided off your original receipt." Pltf.'s Ex. P, at 1.

Plaintiff responded by fax on March 8, 2007, noting that Costco's refund receipt did not use the words "refund" or "credit." Plaintiff suggested a meeting, "at which . . . I will confirm that you have received payment for the drill, and then listen to your proposal(s) that are directed toward improving your customer service, rectifying the dismally misleading 'refund' transaction slips, convincing me not to picket your store and to bring civil action against you, as a number of attorneys have advised me to do." Pltf.'s Ex. Q, at 1. Plaintiff enclosed refund receipts from another store, which stated, "Refund Transaction."

Plaintiff met with Sartain, bringing copies of receipts. After meeting with plaintiff, Sartain continued to believe there was probable cause to charge plaintiff with theft.

Sartain asked Froschauer to sign the summons under oath as the complainant. After consulting with Moscatelli, Froschauer signed the summons because he "continued to believe based on my investigation that [plaintiff] had left the Costco warehouse on February 18 with unpaid merchandise." Froschauer Decl. at 3. The prosecutor endorsed the summons and complaint.

7 - OPINION AND ORDER

Plaintiff went to trial on a charge of Theft III. The jury could not reach a verdict and the court declared a mistrial.

The City decided to proceed on a lesser included charge of attempted theft. Because attempted theft of less than $50 is a violation, the prosecution's burden of proof was by a preponderance of the evidence, and plaintiff had no right to counsel or a jury.

Plaintiff was acquitted of attempted theft. He then brought this action.

## STANDARDS

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## DISCUSSION

## I. Civil Rights Claims under 42 U.S.C. § 1983

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must show that the defendant, while acting under color of state law, deprived the plaintiff of a federal constitutional or statutory right. See Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). For purposes of a claim under § 1983, a private

person may act "under color of state law" through joint action
with a state official.[1]  Franklin, 312 F.3d at 445.  "A plaintiff
may demonstrate joint action by proving the existence of a
conspiracy or by showing that the private party was 'a willful
participant in joint action with the State or its agents.'"  Id.
(quoting Collins v. Womancare, 878 F.2d 1145, 1154 (9th Cir.
1989) (further citation omitted)).  The plaintiff must show a
"substantial degree of cooperation" between government officials
and the private individual.  Id.

Here, plaintiff argues the Costco defendants should be
treated as state actors because they conspired with Medford
police officers and officials to deprive him of his
constitutional rights.  Plaintiff contends the criminal charges
against him were meritless, and the Costco defendants used the
criminal process in an attempt to prevent him from bringing a
civil action against Costco.

Plaintiff has not presented evidence that the Costco
defendants did anything more than report accurately to the
Medford police that a customer had taken an item from the store
without paying for it, and then testify at the subsequent trials.
A private person who reports a possible crime to law enforcement,

---

[1] Other tests for determining whether a private individual
acted under color of state law are not relevant here.  See Franklin
v. Fox, 312 F.3d 423, 444-45 (describing public function, joint
action, state compulsion, and governmental nexus tests) (citing
Johnson v. Knowles, 113 F.3d 1114, 1118-19 (9th Cir. 1997)).

without more, does not act under color of state law.   See Rivera
v. Green, 775 F.2d 1381, 1384 (9th Cir. 1985); Ginsberg v. Healey
Car & Truck Leasing, Inc., 189 F.3d 268, 272 (2d Cir. 1999)
("provision of background information to a police officer does
not by itself make [the private individual] a joint participant
in state action under Section 1983"); Arnold v. International
Bus. Mach., 637 F.2d 1350, 1357-58 (9th Cir. 1981).

The Arnold decision shows the extent to which a private
party may assist law enforcement officials without the private
party incurring liability under § 1983.   In Arnold, IBM helped
create a law enforcement task force to investigate the possible
theft of IBM trade secrets.   An IBM security manager worked on
the task force, and IBM provided the task force with information,
funds, and witnesses.   If it were not for IBM's assistance, no
charges would have been brought against the plaintiff.   The
Arnold court concluded that IBM did not cause the plaintiff's
injuries because IBM did not direct the task force to bring
criminal charges against him.

Here, Costo and its employees had far less involvement in
the investigation and prosecution of plaintiff.   Plaintiff has
not presented evidence that the Costco defendants improperly
influenced the City of Medford's decision to prosecute him.

Plaintiff argues that the City would not have brought
charges but for Froschauer's signature on the summons as the

complainant. This fact, without more, does not show that the Costco defendants directed or controlled the City's decision to prosecute plaintiff. Instead, the evidence submitted by the Costco defendants indicates that the City independently decided to charge and prosecute plaintiff.

Plaintiff alleges that the Costco defendants conspired amongst themselves. Assuming that is true, it is not relevant here to establishing liability under § 1983.

## II. State Law Claims

### A. Malicious Prosecution

The elements of a claim for malicious prosecution are

(1) the institution or continuation of the original criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; 4) malice in instituting the proceedings; (5) lack of probable cause for the proceeding; and (6) injury or damage because of the prosecution.

Rose v. Whitbeck, 277 Or. 791, 795, 562 P.2d 188, 190, modified on other grounds, 278 Or. 463, 564 P.2d 671 (1977)). Probable cause is a legal issue for the court. Gustafson v. Payless Drug Stores, 269 Or. 354, 357, 525 P.2d 118, 120 (1974). In this context, "probable cause" means the subjective and objectively reasonable belief that the person in question committed a crime. Id.

It is undisputed that plaintiff left Costo with a new drill set he had not purchased. Generally speaking, "a storekeeper

11- OPINION AND ORDER

will have probable cause to believe a customer is shoplifting if the essential facts are that the customer took merchandise and walked out of the store without paying for the merchandise." Gustafson, 269 Or. at 361-62, 525 P.2d at 122 (no probable cause when the store had refused the plaintiff's tendered payment for a carton of cigarettes, and the plaintiff did not try to conceal the carton and remained just outside the store for several minutes). Here, plaintiff may not have concealed the new drill set, but he did leave Costco without stopping at the Returns counter or speaking to a manager. A reasonable observer could have believed that plaintiff intended to take the new drill set without paying for it.

I conclude as a matter of law that there was probable cause to charge plaintiff with theft. Plaintiff's acquittal does not show that there was no probable cause. A conviction requires a higher burden of proof than is required to show probable cause.

Plaintiff blames Costco for issuing a refund receipt that he mistakenly assumed was a purchase receipt. Rather than seeking an explanation from a manager, however, plaintiff chose instead to leave the store without paying.

## B. **False Imprisonment and False Arrest**

Plaintiff brings a claim for false imprisonment and false arrest. The gravamen of this tort is "'the unlawful imposition of restraint on another's freedom of movement.'" Hiber v.

12- OPINION AND ORDER

Creditors Collection Serv., 154 Or. App. 408, 413, 961 P.2d 898,
901 (1998) (quoting Buckel v. Nunn, 133 Or. App. 399, 405, 891
P.2d 16, 21 (1995) (further citation omitted)).  "The tort has
four elements: (1) defendant must confine plaintiff; (2)
defendant must intend the act that causes the confinement; (3)
plaintiff must be aware of the confinement; and (4) the
confinement must be unlawful."  Id. (citations omitted).

        "Oregon follows the widely accepted principle that a person
is not liable for false arrest if he or she merely lays facts
before a law enforcement or judicial officer who makes the arrest
on the basis of the officer's own judgment and discretion."  Id.,
154 Or. App. at 418 n.13, 961 P.2d at 904 n.13 (citation
omitted).  Plaintiff has not countered the evidence that there
was probable cause to charge him with theft, or that the City
decided independently to prosecute him.

        **C.  Slander or Defamation**

        Plaintiff brings claims titled "Slander/Libel" and
"Defamation of Character."  To the extent plaintiff bases these
claims on testimony at his criminal trials, that testimony is
absolutely privileged and cannot support a defamation claim.
Delong v. Yu Enterprises, 334 Or. 166, 171, 47 P.3d 8, 10 (2002)
("statements that are made as part of judicial and quasi-judicial
proceedings are absolutely privileged").  To the extent plaintiff
bases these claims on the Costco defendants' statements to the

13- OPINION AND ORDER

police and to other Costco employees, those statements are entitled to a qualified privilege.  Defendants truthfully stated that plaintiff left the store without paying for the new drill set.  The good faith report of a possible crime is conditionally privileged.  Id., 334 Or. at 173, 47 P.3d at 12.  There is no evidence that defendants abused this privilege.

**D.   Intentional Infliction of Emotional Distress**

Plaintiff brings a claim for intentional infliction of severe emotional distress.  Plaintiff has not shown that defendants' conduct was outrageous enough to support an IIED claim.  See McGanty v. Staudenraus, 321 Or. 532, 543-44, 901 P.2d 841, 849 (1995).

Plaintiff also brings a negligence claim, but he has not shown that defendants acted unreasonably.

**CONCLUSION**

The Costco defendants' motion for summary judgment (48) is granted.  Plaintiff's motion for summary judgment (69) is denied.

IT IS SO ORDERED.

DATED this _____ day of January, 2010.

OWEN M. PANNER
U.S. DISTRICT JUDGE

14 - ORDER